IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANDRIA D. DOWNS,**

        **Plaintiff,**

  v.                                 Civil Action 2:19-cv-3699
                                          Judge George C. Smith
                                          Magistrate Judge Jolson

**COMMISIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Andria D. Downs, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 15) and **AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff filed her application for SSI on May 19, 2015, alleging that she was disabled beginning June 20, 2012. (Doc. 10, Tr. 177–82). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held the hearing on January 10, 2018. (Tr. 41–79). On May 24, 2018, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 17–40). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on August 26, 2019 (Doc. 1), and the Commissioner filed the administrative record on November 12, 2019 (Doc. 10). Plaintiff filed her Statement of Errors, (Doc. 15), on January 17, 2020, Defendant filed

an Opposition, (Doc. 16), on March 3, 2020 and no reply was filed. Thus, this matter is now ripe for consideration.

    **A.    Relevant Medical History and Hearing Testimony**

Because Plaintiff's statement of errors pertains to only her mental impairment, the Undersigned will limit the discussion of the medical record and the hearing testimony to the same.

    *1.    Medical History*

Analyzing Plaintiff's mental impairments, the ALJ summarized the relevant medical records:

> The claimant started outpatient treatment at Scioto Paint Valley Mental Health Center in March 2014. At that time, the claimant reported symptoms including anxious and depressed mood, fear of crowds, nightmares, and fatigue (Ex. 3F/2). The claimant was prescribed Klonopin. She also participated in individualized counseling. Subsequently, in May 2015, the claimant reported she was doing well with such treatment (Ex. 4F/8). Mental status examinations throughout this period showed anxious and depressed mood, but also showed average intelligence, good memory, fair concentration, and fair judgment (Ex. 3F/11, 32, 53; 11F/2, 30). In October 2015, the claimant underwent a consultative examination performed by Dr. Tanley. At that time, the claimant again reported symptoms including fear of crowds and nightmares. Dr. Tanley noted the claimant's hygiene and dress were unremarkable. Dr. Tanley also noted the claimant presented with appropriate affect, she was generally cooperative, she made good eye contact, and she did not demonstrate any eccentricities of manner, impulsivity, or compulsivity. Based upon his examination, Dr. Tanley estimated the claimant's intellectual functioning to be in the average range. Additionally, Dr. Tanley noted the claimant exhibited intact recent and remote memory. Furthermore, Dr. Tanley noted the claimant answered all questions in timely fashion (Ex. 8F). Thereafter, the claimant was hospitalized for intentional overdose in January 2016 (Ex. 13F/125). Her medications were adjusted during her hospitalization. Upon discharge, the claimant exhibited euthymic mood, full affect, goal directed thought process, and good judgment (Ex. 13F/93-94). Similarly, the claimant was treated for intentional overdose in January 2017 (Ex. 21F). Yet, the undersigned notes that the claimant had been off her medication for several months prior to this episode (Ex. 22F). The claimant continued to receive treatment at Scioto Paint Valley Mental Health Center until November 2017. As before, mental status examinations throughout this period showed anxious and depressed mood, but also showed average intelligence, good memory, fair concentration, and fair judgment (Ex. 23F/2, 7; 31F/3, 8).

(Tr. 28–29).

As for the relevant opinion evidence, the ALJ gave great weight to the opinions of state agency psychologist, Dr. Bergsten, who opined that Plaintiff could interact with others on a superficial basis but would not work well in an environment where she would need to manage conflict, problems, or customer complaints and where her duties are relatively static and changes can be explained. (Tr. 29 (citing Tr. 92)). The ALJ also assigned great weight to the opinion of the state agency psychologist, Dr. Tangeman, who reviewed the file upon reconsideration and opined that Plaintiff: could occasionally interact with coworkers and supervisors, but never with the public; would perform best in a solitary environment; could perform work related tasks in situations where duties are relatively static and changes could be explained; and that her work should be low stress without strict time or production requirements. (Tr. 29 (citing Tr. 110)).

Further, the ALJ also assigned great weight to the opinion of the consultative examiner Dr. Tanley, who opined Plaintiff "would be expected to show little to no difficulty with tasks of increasing complexity and multistep tasks." (Tr. 29). However, her symptoms would "negatively impact ... her ability to focus and concentrate." (*Id.*). Dr. Tanley also opined that Plaintiff's symptoms would "make the free and easy commerce of social interaction problematic" and "lower her frustration tolerance and put her at some risk for the pressures of work." (*Id.* (citing Tr. 605)). The ALJ agreed that the "mental status examinations throughout the relevant period showed anxious and depressed mood, but also showed average intelligence, good memory, fair concentration, and fair judgment." (Tr. 29).

The ALJ assigned little weight to Plaintiff's treating nurse practitioner, Ms. Berlin, who opined that Plaintiff had mild limitation in understanding, remembering, and applying information, marked limitation in interacting with others, marked limitation in concentrating, persisting, or maintaining pace, and extreme limitation in adapting or managing oneself. (Tr. 30 (citing Tr.

3

1266)). The ALJ determined, "that Nurse Berlin is not an acceptable medical source pursuant to 20 CFR 416.902. Additionally, this opinion is not consistent with the medical evidence as a whole." (Tr. 30).

  2. *Relevant Hearing Testimony*

  The ALJ summarized the testimony from Plaintiff's hearing:

> At the hearing, the claimant alleged she sustained injuries in a motor vehicle accident in June 2012 that left her "physically and mentally unstable." The claimant alleged she experienced bilateral knee pain, which interfered with her ability to stand or sit for extended periods. The claimant also alleged she was blind in her left eye. The claimant further alleged she experienced migraine headaches three to four times a week. Moreover, the claimant alleged she did not like to leave her house and she had a "hard time" around other people. As to her specific functional limitations, the claimant alleged she could only stand for about twenty minutes before needing to sit and elevate her bilateral lower extremities. Additionally, the claimant alleged she had difficulty climbing stairs.

(Tr. 26–27). The ALJ also noted that Plaintiff "was able to recall details regarding her medical and employment history at the hearing without apparent difficulty." (Tr. 24).

  3. *The ALJ's Decision*

  The ALJ found that Plaintiff has not engaged in substantial gainful activity since May 19, 2015, the date of the application. (Tr. 23). The ALJ determined that Plaintiff suffered from the following severe impairments: osteoarthritis of the bilateral knee, vision loss in left eye, migraine headaches, obesity, depressive disorder, and posttraumatic stress disorder (PTSD). (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*). The ALJ considered whether her impairments met Listings 12.04 (depressive, bipolar and related disorders) and 12.15 (trauma and stressor related disorders). (Tr. 24). The ALJ discussed each of the paragraph B criteria, determining that Plaintiff had no limitations in understanding, remembering, or applying information; moderate limitations

4

in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. (Tr. 24-25). The ALJ next considered whether the paragraph C criteria were met and determined that they were not. (Tr. 25).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally operate controls with the right foot; she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs, balance, kneel, crouch, and crawl; she can frequently stoop; she cannot perform commercial driving; she can have occasional exposure to an environment where temperatures are less than 40 degrees Fahrenheit; she cannot perform fine detailed inspection work; she can have occasional exposure to very loud noise defined as Selected Characteristics of Occupations (SCO) code five; she can never use heavy machinery or be exposed to unprotected heights; she must avoid exposure to extreme bright light such as stage lights or head lights; and she is limited to occupations that do not require binocular vision. The claimant is limited to low stress work defined as only occasional decision making and only occasional changes in work setting; she can never interact with the public; she can occasionally interact with coworkers and supervisors; and she can never perform work requiring management of conflicts or customer complaints.

(Tr. 26).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 27).

Relying on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past relevant work as an administrative clerk and a patient scheduler, but could perform jobs that exist in significant numbers in the national economy, such as a labeler, routing clerk, or tacking machine tender. (Tr. 31–32). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since May 19, 2015, the date the application was filed (20 CFR 416.920(g))." (Tr. 32).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

Plaintiff raises multiple errors to the Court, arguing that the ALJ: (1) failed to evaluate the impact of Plaintiff's diagnoses of conversion disorder, anxiety disorder, schizoaffective disorder, panic disorder, and personality disorder at Steps Two, Three, and Five of his decision, (Doc. 15 at 23–25); selectively parsed the medical evidence in summarizing the mental status exam findings in evidence and by doing so erred in granting little weight to Ms. Berlin's opinion, (*id.* at 25–27); erred in granting great weight to Dr. Tanley and the state agency psychological consultants, (*id.* at 27–29).

### A. Alleged Failure to Evaluate Mental Impairments

Plaintiff argues that the ALJ erred by failing to consider her conversion disorder, anxiety

disorder, schizoaffective disorder, panic disorder, and personality disorder at Steps Two, Three, and Five of the decision. The Undersigned first addresses the ALJ's Step Three analysis and then addresses Plaintiff's other allegations of error.

*1.     Step Three*

A claimant will be found disabled at step three if his impairment meets or equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "Yet, neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). "The ALJ should discuss the relevant listing, however, where the record raises 'a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Smith-Johnson*, 554 F. App'x at 432 (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

"A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he has satisfied a listing." *Smith-Johnson*, 554 F. App'x at 432 (quoting *Sheeks*, 544 F. App'x at 641–42). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson*, 554 F. App'x at 432–33 (collecting cases). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Smith-Johnson*, 554 F. App'x at 433.

Here, Plaintiff emphasizes, the ALJ did not consider listings that corresponded with her schizophrenic disorder (Listing 12.03) and her anxiety and panic disorder (Listing 12.06). What specific evidence does Plaintiff identify to show that she could meet or equal every requirement

7

of these listings? Nurse Practitioner Berlin's Psychiatric Review Technique form. (*See* Doc. 15 at 24–25). According to Plaintiff, Ms. Berlin opined that Plaintiff's mental impairments satisfied both of these listings. (*Id.*).

But Ms. Berlin cites to no medical evidence and offers no explanation for the opinions she offered in her check-the-box form. (*See generally* Tr. 1252–68). As the Sixth Circuit has explained, "an ALJ may properly discount a treating physician's opinion when the opinion is in the format of a conclusory checkbox questionnaire." *Yoder v. Saul*, No. 1:18-CV-1831, 2019 WL 4451379, at *11 (N.D. Ohio Sept. 17, 2019) (citing *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016)); *see also Collins v. Comm'r of Soc. Sec.*, No. 2:18-CV-53, 2019 WL 4645737, at *8 (W.D. Mich. Aug. 30, 2019) *report and recommendation adopted*, No. 2:18-CV-53, 2019 WL 4643807 (W.D. Mich. Sept. 24, 2019) (quotation marks and citation omitted) ("Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best."). Here, Ms. Berlin is not even a treating physician, but rather a nurse practitioner who is considered an "other source" under the regulations. Her check-the-box form, therefore, is not "specific evidence that demonstrates [Plaintiff] reasonably could meet or equal every requirement of [Listings 12.03 and 12.06]," *Smith-Johnson*, 554 F. App'x at 432–33 (collecting cases). Because Plaintiff has failed to identify the necessary evidence here, the ALJ did not err in failing to evaluate Listings 12.03 and 12.06. *See id.* at 433.

   2.   *Steps Two and Five*

Plaintiff also contends that the ALJ erred by not evaluating her conversion disorder, anxiety disorder, schizoaffective disorder, panic disorder, and personality disorder at Step Two and then failed to evaluate the impact of these disorders in formulating Plaintiff's RFC.

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments

8

constitute "medically determinable" impairments. *See* 20 C.F.R. § 404.1508; 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. Only evidence from acceptable medical sources can establish a medically determinable impairment. 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have medically determinable impairment(s)"). Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. And "[i]f an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017) (citing *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-CV-0223, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC); 20 C.F.R § 404.1527(a)(1); 20 CFR § 404.1545(a)(2)).

The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers*, 486 F.3d at 243 n. 2 (internal quotation marks and citation omitted), intended to "screen out totally groundless claims," *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." *See* Soc. Sec. Rul. 96–3p, 1996 WL 374181 at * 1 (1996). Because the regulations require an ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, once a severe

9

impairment is found, all impairments, regardless of how they are classified, will be analyzed in the ALJ's determination. *See Dyer v. Colvin*, No. CV-14-156-DLB, 2016 WL 1077906, at *3 (E.D. Ky. Mar. 17, 2016). "For this reason, the Sixth Circuit has consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his or her analysis." *Id.*

Here, Plaintiff notes correctly that the ALJ did not address her conversion disorder, anxiety disorder, schizoaffective disorder, panic disorder, or personality disorder at Step Two. (*See* Tr. 23). The question then is whether the ALJ analyzed any impairments resulting from these disorders in the rest of his decision. *See Dyer*, 2016 WL 1077906, at *3.

Plaintiff's argument has two flaws. First, she fails to develop it. (*See* Doc. 15 at 23–25). Instead, she provides a string cite to records in which medical providers noted she was diagnosed with these disorders, (*id.* at 23), and then argues that the ALJ's failure to address them by name in his RFC analysis means that the ALJ did not consider them at all, (*id.* at 24). But a Social Security claimant's RFC is concerned with functional limitations, rather than diagnoses. *See* 20 C.F.R. § 404.1545(a)(2) ("Your residual functional capacity is the most you can still do despite your limitations."). And Plaintiff has not explained what, if any, functional limitations she experienced as a result of her conversion disorder, anxiety disorder, schizoaffective disorder, panic disorder, and personality disorder. (*See* Tr. 23–25). As a result, she has done little to show she suffered prejudice here. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Second, and more importantly, an independent review of the record confirms that the ALJ accounted for the functional limitations Plaintiff experienced as a result of her conversion disorder, anxiety disorder, schizoaffective disorder, panic disorder, and personality disorder. The record

reflects that Plaintiff's mental healthcare providers generally talked about her numerous disorders in collective terms. Her mental healthcare providers noted that she responded poorly to stress, was easily irritated, did not like being in crowds, and experienced difficulty in focusing on tasks due to her mental impairments. (*See, e.g.*, Tr. 404, 411, 674, 1138, 1148). After reviewing the record related to Plaintiff's mental impairments, (Tr. 28–29), the ALJ tailored Plaintiff's RFC, limiting her to "low stress work defined as only occasional decision making and only occasional changes in work setting; she can never interact with the public; she can occasionally interact with coworkers and supervisors; and she can never perform work requiring management of conflicts or customer complaints," (Tr. 26).

In summary, after finding severe impairments at Step 2 of his analysis, the ALJ considered the effects of Plaintiff's mental impairments in analyzing Plaintiff's RFC and limited her RFC accordingly. The ALJ did not err as a result. *See Dyer*, 2016 WL 1077906, at *3.

### B. Cherry-Picking Evidence

Plaintiff next argues that the ALJ "selectively parsed" the record when summarizing her mental status exam findings. (Doc. 15 at 25–27).

As this Court has recognized, "it is improper for the ALJ to 'cherry-pick' a sentence in the record to support his conclusion, which should be based instead on the record as a whole." *McKenzie v. Comm'r of Soc. Sec.*, No. 2:16-CV-544, 2017 WL 2274243, at *7 (S.D. Ohio May 25, 2017) (collecting cases). But "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (holding that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by

a party."). "The argument that the ALJ mischaracterized or 'cherry-picked' the record is frequently made and seldom successful, because 'the same process can be described more neutrally as weighing the evidence.'" *Smith v. Comm'r of Soc. Sec.*, No. 1:14-CV-984, 2015 WL 7460080, at *3 (W.D. Mich. Nov. 24, 2015) (quoting *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)).

That is what the ALJ did here. He thoroughly reviewed the medical record and opinion evidence regarding Plaintiff's mental impairments at Step Two and Step Five of the analysis. (*See* Tr. 24–26, 28–30). Although he did not explicitly address every symptom identified by Plaintiff, (*see* Doc. 15 at 25–26), the ALJ reviewed records reflecting those symptoms in his analysis of Plaintiff's RFC, (*see* Tr. 28–29 (citing Exs. 1A, 3A, 3F, 4F, 8F, 11F, 13F, 21F, 22F, 23F, 27F, 31F)). Further, the ALJ gave great weight to the opinions of the consultative examiner, Dr. Taney, and state agency psychological consultants, Drs. Bergsten and Tangeman, all of whom reviewed relevant records that Plaintiff alleges the ALJ ignored. (*See* Tr. 29).

The ALJ did not cherry-pick the record as a result. He, instead, weighed the evidence and resolved any conflicts as required under the regulations. *Cf. White*, 572 F.3d at 284 ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."). Plaintiff's argument fails as a result.

C. **Analysis of Opinion Evidence**

Plaintiff's final argument is an extension of her second: The ALJ erred because he "relied on a selective parsing of the MSE findings to support the weight granted" to the opinions of Drs. Taney, Bergsten, and Tangeman and failed to recognize that Dr. Taney issued his opinion before Plaintiff was diagnosed with schizoaffective disorder, panic disorder, and personality disorder. (Doc. 15 at 27–28).

12

The Court disagrees. First, the Court has already rejected the contention that the ALJ cherry-picked the record. *See supra* at 11–12. Second, the Court is unaware of any authority, and Plaintiff cites none, showing that the ALJ erred by giving great weight to Dr. Taney's opinion despite Plaintiff being subsequently diagnosed with additional mental health disorders. And there is no suggestion that the ALJ relied on Dr. Taney's opinion in finding that Plaintiff's schizoaffective disorder, panic disorder, and personality disorder did not cause her to be disabled. The ALJ did not err accordingly.

## IV.  CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.


Date:  April 7, 2020                               /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE